2017 Aug-15 AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STUART APPELBAUM, et al. ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO: |
| ) | 2:15-cv-1745-KOB |
| DIAMOND RUBBER PRODUCTS CO., ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

The Plaintiffs, trustees and fiduciaries of the Retail, Wholesale and Department Store International Union and Industry Pension Fund, sued Defendant Diamond Rubber Products Company, alleging that it failed to make contributions to the fund required by the collective bargaining agreement. Both parties have moved for summary judgment. (Docs. 35, 37). For the reasons discussed in this opinion, the court will deny both motions.

**I.	BACKGROUND**

Diamond Rubber manufactures and sells rubber products, such as chocks, gaskets, seals, and bumpers. Since 2004, Diamond has signed a series of collective bargaining agreements with the Retail, Wholesale, and Department Store International Union. The CBAs recognized the Union "as the sole and exclusive bargaining agency for all production, plant maintenance, building maintenance and shipping personnel, including truck drivers of the company at its present plant and at any and all future or new plants and operations of the company located in the State of Alabama." The agreements excluded "watchmen, clerical or office employees, superintendents, foremen, temporary employees or supervisors as defined in the [National Labor Relations] Act."

Until 2015, Article XXII of the CBAs required Diamond to contribute a set amount "*per member*" to the Union's pension fund "on behalf of said employee who has completed one (1) year of service with the company." Diamond withdrew from the pension plan effective September 18, 2015.

The Fund is governed by an Agreement and Declaration of Trust and its amendments. From January 2005 to September 2015, Diamond would provide a monthly report of bargaining unit employees for whom it was making a pension contribution and would also report the names of employees who were not covered by the CBA but for whom the company made a pension contribution.

In September 2014, six employees were participating in the Pension Fund. Three were not Union members. Diamond's position is that "per member" means per *union* member and that the CBA *required* the company to make contributions for union members and *permitted* it to make contributions for other employees who asked to participate in the Fund. In contrast, the Trustees argue that the CBA *required* the company to make contributions for all employees covered by the CBA, regardless of their union status, and *permitted* the company to make contributions for other employees who could not join the union.

## II. STANDARD OF REVIEW

When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986). The court must not weigh the evidence and make credibility determinations because these decisions belong to a jury. *See id.* at 254.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

The applicable Rule 56 standard is not affected by the filing of cross motions for summary judgment. *See, e.g., United States v. Oakley*, 744 F.2d 1553, at 1555–56 (11th Cir. 1984). When parties file cross motions for summary judgment, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1288 (N.D. Ala. 2009). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact . . . does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Id.* (internal quotation marks omitted). The Eleventh Circuit has noted that "[c]ross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Oakley*, 744 F.2d at 1555.

## III.   DISCUSSION

The question presented is who is a "member" under the pension plan provision of the CBA that requires Diamond to make contributions "per member" to the plan. Diamond argues that "member" means union member, while the Plan Trustees contend that "member" means member of the pension plan. Whether Diamond is liable for unpaid contributions to the fund for non-union

3

employees turns on the answer to that question.

As a threshold matter, the court must determine if it owes any deference to the Trustees' interpretation of the CBAs. The Trustees argue that the court must deny Diamond's motion for summary judgment if their interpretation of the agreements is not arbitrary or capricious. The Trustees are mistaken.

True, the court reviews a trustee's decision construing the terms of an *ERISA plan* under the arbitrary or capricious standard. *See*, *e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114–15 (1989). But the court owes no such deference to an ERISA trustee's interpretation of a CBA. Rather, the court interprets the CBA like it would any other contract. *See M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (instructing courts to interpret CBA using "ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy"). Therefore, the court owes no deference to the interpretation of the CBA advanced by the Trustees.

The parties' cross motions present two issues: whether "member" in Article XXII of the CBA is ambiguous and whether one of the potential resolutions of the ambiguity would render the agreement inconsistent with federal labor law.

### A. Ambiguity of "Member"

When a contract is unambiguous, a court should interpret it according to its "plainly expressed intent." *Tackett,* 125 S. Ct. at 933 (quoting 11 R. Lord, Williston on Contracts § 30:6, at 108 (4th ed. 2012)). A contract "susceptible of more than one reasonable meaning" is ambiguous. *Citizens Bank & Trust v. LPS Nat. Flood*, LLC, 51 F. Supp. 3d 1157, 1173 (N.D. Ala. 2014) (quoting *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 745 (Ala. 2000)).

Here, "member" in Article XXII of the CBAs is ambiguous. The term is not defined by the

agreement and is susceptible to at least two different readings. "Member" could be read as either union member or pension member. One interpretation would require Diamond to make a contribution per plan member regardless of union membership; the other would only *require* Diamond to make contributions for union members. Therefore, the court cannot discern the plainly expressed intent of the parties from the text of the provision.

Alabama law instructs a court faced with an ambiguous contract to "apply rules of construction and attempt to resolve any ambiguity in the contract before looking to factual issues to resolve the ambiguity." *Ohio Cas. Ins. Co. v. Holcim (US)*, 744 F. Supp. 2d 1251, 1259 (S.D. Ala. 2010) (quoting *Extermitech, Inc. v. Glasscock, Inc.*, 951 So. 2d 689, 694 (Ala. 2006)). If the rules of construction do not resolve the ambiguity, the court then considers "factual issues, which are generally for the jury." *Id.*

Diamond makes four arguments based on rules of construction. First, Diamond observes that the CBAs define "employees" in Article I as members of the bargaining unit but use the term "member" to describe the people for whom the agreement obligated Diamond to make contribution. From this fact, Diamond argues that if the parties had intended for the company to be required to make contributions for every bargaining unit employee, Article XXII would read "per employee" rather than "per member." Second and relatedly, Diamond argues that interpreting "employee" and "member" synonymously would fail to give effect to each word of the contract.

Contrary to Diamond's assertion, the Trustees' reading would not mean that "employee" and "member" have "the exact same meaning." (Doc. 38 at 9). A pension member is distinct from an employee covered by the CBA. The terms do not have the same *meaning*, regardless of whether the two categories overlap. Further, referring to a "member" of a pension fund is common parlance. Reading "member" in a contract provision as "member of a pension fund" is not

5

unreasonable or inconsistent with the word's usage in this context. *See, e.g.*, *Travelers Ins. Companies v. Fountain City Fed. Credit Union*, 889 F.2d 264, 267 (11th Cir. 1989) (referring to "members of pension plans"). Diamond's first two rules of construction fail to resolve the ambiguity.

Diamond's third and fourth arguments concern the use of "member" in other provisions of the agreement. Diamond argues that every other time the term is used it refers to union members, and that in Article II language, which parallels Article XXII, "member" means "union member." These arguments are unpersuasive for a simple reason: in the provisions cited by Diamond, "member" is qualified by "union." If "member" unequivocally meant "union member," as Diamond claims, placing "union" before "member" would be redundant.

The court finds the rules of construction fail to resolve the ambiguity in the term "member."[1] Therefore, the court must now consider whether factual issues shed light on the parties' intent and, therefore, the meaning of the term "member." The Union's representative testified that everyone covered by the CBA received the same benefits, including requiring the employer to make contributions on their behalf to the fund, regardless of whether they had joined the union. Diamond's representative testified that the parties intended that the CBAs would only *require* the company to contribute to the pension fund for union members. A genuine issue of material fact exists. Therefore, the court cannot grant either party's motion for summary judgment based on traditional contract interpretation principles.

### B. Consistency with Federal Law

Having found "member" to be ambiguous, the court now considers whether federal labor

---

1 The Trustees also argue that the course of dealing between the parties undermines Diamond's reading of the CBA because the company made contributions for both union and non-union members. However, this fact does not undermine Diamond's position that it was only *required* to make contributions for union members.

law would render one of the interpretations of the term untenable. The Trustees argue that Diamond's reading of the CBAs runs afoul of the National Labor Relations Act, which prohibits discrimination in any term or condition of employment to encourage or discourage union membership. *See* 29 U.S.C. 158(a)(3). Given that case law and the contract itself requires interpretation of the document to be in accordance with federal law, the Trustees urge the court to find as a matter of law that the CBAs require Diamond to contribute to the pension fund for *all* bargaining unit employees, regardless of union status.

The Trustees' argument appears to presume that *any* distinction in the CBA between union and non-union employees is illegal. Some language in the case law suggests as much. *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 623 (3d. Cir. 1984) ("The absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction."). But to support the Trustees' extrapolated principle, the court would have to isolate the language from the context of those cases. For instance, in *Byrnes*, "[t]he district court found that [the company's] practice of making contributions to the Funds on behalf of union members only will encourage union membership." *Id*. Importantly, the Third Circuit noted that the company *did not dispute* the district court's finding. *See id*.

Whether a benefit encourages or discourages union membership is a question of fact. A distinction is not discrimination if a "virtually identical benefit[]" is conferred on non-union employees. *D.E.W., Inc. v. Local 93, Laborers' Int'l. Union of N. Am.*, 957 F.2d 196, 202 (5th Cir. 1992). Accordingly, agreements that "limit contributions to union members only" are likely to violate federal law. *Id*. But if the CBA does not expressly prohibit non-union member participation in the benefit, the agreement is not illegal on its face. Rather, the court must then inquire whether the agreement has the effect of encouraging or discouraging union membership. If a virtually

7

identical benefit is offered by the company to non-union members, the agreement is not invalid, and may permissibly confer the benefit in the agreement only on union employees.

Unlike *Byrnes*, Diamond disputes that reading the CBAs to require contributions only for union employees would encourage union membership because the company allowed any employee who wished to participate in the program. In Diamond President David Blumenthal's declaration, he testified that Diamond did not use pension contributions to discriminate for or against union membership. Further, Mr. Blumenthal said Diamond allowed non-union members within the bargaining unit to participate in the Fund. Diamond employees who were not union members did participate in the fund. However, the record does not conclusively establish that any of those employees were *within the bargaining unit*.

As the Trustees are the party advancing this argument in their motion for summary judgment, the court must view the facts in the light most favorable to Diamond. The court cannot find as an undisputed fact at summary judgment that Diamond did not offer a virtually identical benefit to the one offered in the CBAs. Mr. Blumenthal's testimony creates a question of fact on this matter. Therefore, the Trustees have failed to carry their burden, and the question of whether the benefit encouraged union membership must be resolved by a fact finder.

## IV. CONCLUSION

Because genuine issues of material fact exist as to the intent of the parties in using the term "member" in Article XXII of the CBAs and whether the pension benefit conferred by the agreements impermissibly encouraged union membership, the court will deny both parties' motions for summary judgment. The court will enter a separate order consistent with this opinion.

8

**DONE** and **ORDERED** this 15th day of August, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE